**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**ALAPAHA YELLOW PINE PRODUCTS, INC., and Clarence Hubert Moore, Defendants.**

**Civ. A. No. 593.**

United States District Court
M. D. Georgia,
Valdosta Division.

May 17, 1963.

M. J. Parmenter, Roger J. Martinson, U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Ed. G. Barham, Valdosta, Ga., W. D. (Jack) Knight, Nashville, Ga., R. Lamar Moore, Moultrie, Ga., for defendants.

BOOTLE, Chief Judge.

This is the usual type case brought by the Secretary of Labor under Section 17 of the Fair Labor Standards Act, 29 U.S.C.A. § 217, seeking by injunction restraint of violations of the shipping, minimum wage, overtime, and bookkeeping provisions of the Act—usual in all respects except that here the Secretary prays not only for the usual type injunction, but additionally that the defendants be restrained from the withholding of payment of minimum wages or overtime compensation found by the court to be due employees, thereby laying hold of the amendatory provision of May 5, 1961, which his predecessors were successful in persuading Congress to incorporate into the section for the specific purpose of enabling him to do what he here seeks to do. This new prayer prompted from defendants a demand for a trial by jury on all issues of fact as made by the pleadings. The Secretary countered with his motion to strike said demand on the ground that the right to trial by jury of this cause does not exist under the Constitution or statutes of the United States.

Defendants probably would not demand a jury trial except for the statutory amendment of May 5, 1961, because prior to that date the courts generally recognized this type suit as being strictly equitable in nature, and in the absence of contrary provisions, the defendants are not entitled to trial by jury. Fleming v. Peavy-Wilson Lumber Co., 38 F.Supp. 1001, (W.D.La.1941); Walling v. Richmond Screw Anchor Co., Inc., 52 F.Supp. 670, (E.D.N.Y.1943); Tobin v. Pirchesky, 101 F.Supp. 484 (W.D.Pa. 1951). As long ago as 1830 Mr. Justice Story, writing for the Supreme Court, in Parsons v. Bedford et al., 3 Pet. 433, 446, 7 L.Ed. 732, 736, 737 (1830), after a careful analysis of Article 3 of the Constitution, the Seventh Amendment, and certain earlier acts of Congress, pointed out that "the phrase 'common law', found in this clause, is used in contra distinction to equity, and admiralty, and maritime jurisprudence", saying further "it is well known that in civil causes, in courts of equity and admiralty, juries do not intervene, and that courts of equity use the trial by jury only in extraordinary cases to inform the conscience of the court." But now since said amendment confers, or, as we shall see presently, re-confers, upon the district courts jurisdiction to restrain violations of § 15 of the Act, "including in the case of violations of § 215(a) (2) of this Title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this Chapter * * * *", the defendants strongly urge that for a district court to exercise the above granted jurisdiction without submitting to a jury the issues of fact constitutes a denial of the right to trial by jury guaranteed by the Seventh Amendment to the Constitution. This contention is a serious one and demands careful consideration, because as was so correctly stated by Mr. Justice Story in Parsons v. Bedford, supra, 7 L.Ed. at page 736, "the trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy." It cannot be overlooked, however, that this high evaluation of jury trial by Mr. Justice Story, in which we all concur, comes from the same opinion in which he so clearly points out that in civil causes in courts of equity juries do not intervene, and that courts of equity use the jury trial only in extraordinary cases to inform the conscience of the court.

Actually a district court need not look specifically to § 17 for its power to order reimbursement. A court of

equity has full power to "do complete rather than truncated justice." Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332, 1337 (1946). "A court of equity ought to do justice completely, and not by halves." Camp v. Boyd, 229 U.S. 530, 551, 33 S. Ct. 785, 793, 57 L.Ed. 1317, 1327 (1913). "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." Hecht Company v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754, 760 (1944). The foregoing assumes, of course, that there has been no appropriate legislative curtailment of its equitable powers. The error of the Court of Appeals for the Fifth Circuit in Mitchell v. Robert De Mario Jewelry, Inc., 260 F. 2d 929, 933 (5th Cir., 1958), induced by error of this court, reported in 13 W. H. Cases 709, was in assuming that this power to make restitution does not exist unless, "expressly conferred by an act of Congress or [can] be necessarily implied from a congressional enactment." The Supreme Court, in reversing, pointed out that a court of equity has "the implied power to order reimbursement." Mitchell v. De Mario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960). The Court then quoted from its decision in Porter v. Warner Holding Co., supra (where it was held that the district court could, while enjoining the collection of excessive rents under the Emergency Price Control Act of 1942, also require restitution or reimbursement of rentals), as follows:

> " 'Thus the Administrator invoked the jurisdiction of the District Court to enjoin acts and practices made illegal by the Act and to enforce compliance with the Act. Such a jurisdiction is an equitable one. Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this na-
> ture, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake * * *. [T]he court may go beyond the matters immediately underlying its equitable jurisdiction * * * and give whatever other relief may be necessary under the circumstances * * *.

> " 'Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." Brown v. Swann, 10 Pet. 497, 503 [9 L.Ed. 508] * * *.' 328 U.S., at 397, 398 [66 S.Ct. at 1089, 90 L.Ed. 1332].

> "The applicability of this principle is not to be denied, either because the Court there considered a war time statute, or because, having set forth the governing inquiry, it went on to find in the language of the statute affirmative confirmation of the power to order reimbursement. Id., [328 U.S. at 399, 66 S. Ct. at 1089, 90 L.Ed. 1332]."

Not only is there no statutory restriction upon this equitable power of the district courts, but by § 17 as now written, Congress expressly re-confers this jurisdiction upon the district courts after having once previously taken it away. Section 17 in the original 1938 Act conferred upon district courts the jurisdiction "to restrain violations of section 215 of this title". 29 U.S.C.A. § 217. While the section so read, there was a divergence of views as to whether under the Fair Labor Standards Act this jurisdiction to order reimbursement existed. For instance, the Court of Appeals for the Fifth Circuit said it did not. Wall-

ing v. Crane, 158 F.2d 80 (5th Cir., 1958). See also McComb v. Crane, 174 F.2d 646 (5th Cir., 1949). The Second Circuit said it did. McComb v. Frank Scerbo & Sons, 177 F.2d 137 (2d Cir., 1949), affirming a well reasoned opinion by Judge Medina in McComb v. Frank Scerbo & Sons, 80 F.Supp. 457 (S.D. N.Y.1948). Significant chronologically, as well as on the merits, is the Supreme Court's holding in McComb v. Jacksonville Paper Company, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (Feb. 14, 1949), that the district court has the power to enforce its injunctive decree for compliance with the Act by requiring a civil contempt to be purged by paying to the employees affected the amounts to which the Act entitled them. In passing, the Court said: "We can lay to one side the question whether the Administrator, when suing to restrain violations of the Act, is entitled to a decree of restitution for unpaid wages. Cf. Porter v. Warner Holding Co., 328 U.S. 395 [66 S.Ct. 1086, 90 L.Ed. 1332]. We are dealing here with the power of a court to grant the relief that is necessary to effect compliance with its decree." Of this "lay [ing] to one side" Judge Clark, for the Second Circuit in the Scerbo case, said: "But this, we take it, was only usual judicial caution, not the discovery of a vital difference. And the remedial character of the two remedies is so clear and so similar that we do not believe a convincing distinction between them can be made." In the same year, 1949, effective October 26, Congress, as it unquestionably was empowered to do, amended § 17 by adding to the language of § 17 the following: "Provided, That no court shall have jurisdiction, in any action brought by the Secretary of Labor to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action." And so the statute read until 1961 when Congress, as it unquestionably was empowered to do, undid what it had done by the 1949 Amendment. By the 1961 amendment Congress left standing the power "to restrain violations of § 215 of this title", and at that point eliminated the proviso above quoted and substituted in lieu thereof this explicit re-grant of jurisdiction: "including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter * * *."

The point need not be belabored. The legislative history pointing to the 1949 amendment shows unmistakably that its purpose was "to deprive the courts of jurisdiction to exercise their equity power to order back wages in purely injunctive cases, as was done in McComb v. Scerbo." 95 Cong.Rec. 14879. See also Conf.Rept. U.S.Code Congressional Service, 1949, at 2273.

So now in addition to the courts' inherent equitable powers to see that complete justice is done by ordering restitution or reimbursement in proper cases the district courts now have this explicit grant of power or jurisdiction to restrain "any withholding of payment of minimum wages or overtime compensation found by the court to be due * * *."

■ This is a traditional and typical equity suit. Its primary aim is injunctive relief to protect the *public* interest, "and since the public interest is involved * * * those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." Porter v. Warner Holding Co., supra, 328 U.S. at 398, 66 S.Ct. at 1089, 90 L.Ed. 1332. "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789, 802 (1937). Its ultimate purpose is to give effect to

the policy of Congress and "when Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes. As this Court long ago recognized, 'there is inherent in the Courts of Equity a jurisdiction to * * * give effect to the policy of the legislature.' Clark v. Smith, 13 Pet. 195, 203, 10 L.Ed. 123, 127." Mitchell v. DeMario Jewelry, 361 U.S. 288, 291, 292, 80 S.Ct. 332, 334–336, 4 L.Ed.2d 323.

If, upon the trial of this case, the evidence should be such as to convince the court that in the exercise of its sound discretion an injunction against withholding of payment should be granted the court would then be imposing not so much judicial sanctions as legislative sanctions specifically authorized by Congress, as Congress had a clear right to do. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 47, 48, 57 S.Ct. 615, 629, 81 L.Ed. 893, 917 (1937).

Congress having acted in the premises, having acted within the borders of the Constitution, and having decided upon a national policy, and that policy being as clear as it is, its lucidity being evidenced by Congress' repeated attention to § 17 (Congress by 1961 having come full circle from the point of view it held in 1949) as well as by the unambiguous language used, it is not for the district courts to sit in judgment upon the wisdom of that policy, but, as expressed by Judge Learned Hand in Scerbo, they should be "docile to what Congress may command." See also Mitchell v. Pidcock, 299 F.2d 281, 287 (5th Cir., 1962).

■ Congress by the 1961 amendment did not violate any Constitutional rights of the defendants with respect to trial by jury. The defendants' reliance upon the Seventh Amendment here is misplaced. Their argument on this score was answered by the Supreme Court in National Labor Relations Board v. Jones & Laughlin Steel Corp., supra, 301 U.S. at pp. 48, 49, 57 S.Ct. at pp. 629, 630, 81 L.Ed. 893.

"Respondent complains that the Board not only ordered reinstatement but directed the payment of wages for the time lost by the discharge, less amounts earned by the employee during that period. This part of the order was also authorized by the Act. § 10(c). It is argued that the requirement is equivalent to a money judgment and hence contravenes the Seventh Amendment with respect to trial by jury. The Seventh Amendment provides that 'In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' The Amendment thus preserves the right which existed under the common law when the Amendment was adopted. [Citations omitted]. Thus it has no application to cases where recovery of money damages is an incident to equitable relief even though damages might have been recovered in an action at law. [Citations omitted]. It does not apply where the proceeding is not in the nature of a suit at common law. Guthrie National Bank v. Guthrie, 173 U.S. 528, 537, 43 L.ed. 796, 800, 19 S.Ct. 513 (1899).

"The instant case is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law. It is a statutory proceeding. Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement. The contention under the Seventh Amendment is without merit."

See also Fortenberry v. Maryland Casualty Company, 247 F.2d 702 (5th Cir., 1957).

Another statute worded somewhat similarly to § 17 was construed as follows:

"Since the remedy sought in this action is one given by statute and not by common law, the terms of the statute must be followed. Included in said statute is a provision for the admission of the claimant to the United States 'upon the condition that he shall be subject to deportation in case it shall be decided *by the court* that he is not a national of the United States.' It seems clear from these words that Congress did not intend to give such a claimant the right to a jury trial." Chin Fook v. McGrath, 92 F.Supp. 614, 615 (N.D.Cal.1950).

The question of the advisability of using an advisory jury has also been carefully considered. This court understands the jurisprudence on this point to be as expressed by Judge Porterie, District Judge, in Fleming v. Peavy-Wilson Lumber Co., 38 F.Supp. 1001, 1003 (W.D.La.1941), as follows:

" 'The right to direct the trial of issues with an advisory jury will not be exercised by a court of equity without substantial reasons. An advisory jury is used "only in extraordinary cases, to inform the conscience of the court." Parsons v. Bedford, 3 Pet. [433], 446 [7 L.Ed. 732]. If it does not appear that the issues can better be tried with the aid of a jury than by the court without one, a jury will not be used. Richmond Cedar Works v. Pinnix, 208 F. 785 ([D.C.] E.D.N.C., 1913). An issue will not be directed to a jury where the facts can be satisfactorily ascertained by the court and the proof is clear. United States v. Samperyac, 27 Fed.Cas. [932], No. 16,216a., Hempst. 118 (1831), affd 7 Pet. 222, 8 L.Ed. 665. Nor will the court submit issues to a jury when they are numerous, difficult or complicated, and could not properly be passed upon by the jury without frequent instructions from the court on matters involving intricate questions of law. Parker v. Simpson, 180 Mass. 334, 62 N.E. 401 (1902).' "

■ This is not an "extraordinary" case where a jury is needed "to inform the conscience of the court." There are no factual involvements particularly inviting the collective judgment of a jury. For instance, there are no questions of intent, criminal or otherwise; no question of the exercise of ordinary care, or its opposite, negligence; no question of fraud; not even a question of evaluation. The factual inquiries will probably be this simple: How many hours did each employee work? And what amount was he paid? The pleadings indicate that 39 employees will be involved. The inquiry will doubtless extend over the two year statutory period. One trier of facts can note the dates and amounts as well as twelve, and, additionally, can study the transcript, if necessary. A jury would not have the benefit of the transcript.

Judicial economy does not suggest a jury trial in this type case. A similar case, recently concluded, brought by the same plaintiff against another lumber manufacturer involving virtually the same issues, with some of the same counsel, required two full weeks for trial. This court is not inclined to require 12 to 14 jurors to sit in an advisory capacity for a similar period upon these simple issues. A motion to refer to a special master might have merit.

These conclusions are supported, if not controlled, by Jones & Laughlin Steel Corp. and DeMario. The case of Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358 (1891), holding that an existent right to trial by jury cannot be dispensed with by blending a demand for equitable relief with a claim properly cognizable at law, is not in point. The plaintiff there had an existent right to jury trial upon a simple contract debt, a common law cause of action. In the case at bar neither the Secretary nor the employees have any common law cause of action. They do have a statutory cause of action for unpaid statutory amounts,

but the statute enables and empowers the district courts sitting as courts of equity to order the payment of back wages in relief of violations of §§ 6 and 7 of the Act, as a sort of legislative sanction. The recent cases, Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 984, 8 L.Ed.2d 44 (1962) are to the same effect as Scott v. Neely, supra.

Order has been entered in accordance herewith.