George P. SHULTZ, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

WHEATON GLASS CO., a corporation,
Defendant.

Civ. No. 53–66.

United States District Court,
D. New Jersey.

Nov. 9, 1970.

Bessie Margolin, Associate Sol., Francis V. La Ruffa, Regional Sol. (Peter G. Nash, Sol., and Oliver M. Cooper, Counsel for Trial Litigation), Washington, D. C., for plaintiff.

Joseph B. Kauffman, Atlantic City, N. J., Bruce W. Kauffman, David Pittinsky, Dilworth, Paxson, Kalish, Kohn & Levy, Marcus Manoff, Philadelphia, Pa., of counsel for defendant.

## OPINION

COHEN, District Judge:

This matter is now before the Court upon the certified judgment of the United States Court of Appeals for the Third Circuit,[1] directing entry of an appropriate judgment in favor of the plaintiff, George P. Schultz, Secretary of the United States Department of Labor.

Plaintiff's attorneys submitted a proposed form of judgment which embodies the relief initially demanded in the complaint filed almost five years ago on January 18, 1966. In pertinent part, the proposed judgment affirmatively enjoins the defendant, Wheaton Glass Co., from withholding future wages of female "selector-packers" which are not equal to the wage rate paid to male "selector-packer-stackers";[2] it orders that all back wages determined to be due these females be paid to the plaintiff for their benefit, dating from March 1, 1965, the date on which the Equal Pay Act of 1963, 29 U.S.C. § 206(d),[3] became effective, with respect to Wheaton; and further, it provides that interest shall be awarded upon such back pay at the legal rate up to the date the said wages are in fact equalized.

In opposing the Secretary's proposed judgment, Wheaton strenuously resists both its form and substance. Wheaton offers, instead, its own form of judgment which in substance provides for the equalization of wage rates in the classifications of "selector-packers" and "selector-packers-stackers" from May 18, 1970, the date on which *certiorari* was denied by the United States Supreme Court, rather than March 1, 1965, as claimed by the Secretary; it provides also, that all employees in both these job classifications be paid the same wage currently paid to the males, if such employees perform all duties assigned to them by Wheaton in a non-discriminatory manner. Wheaton's proposed judgment is silent with respect to interest.

Contemporaneously with the submission of the proposed judgments, Wheaton moved for an order dismissing that portion of the Secretary's action which, under § 217 of the Fair Labor Standards Act, seeks an award of back wages on behalf of the female employees. In support of this motion, Wheaton urges that this Court lacks subject matter jurisdiction[4] to grant such relief when,

---

1. Shultz (formerly Wirtz) v. Wheaton Glass Co., 421 F.2d 259 (3 Cir. 1970), cert. den. 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970), reversing Wirtz v. Wheaton Glass Co., 284 F.Supp. 23 (D. N.J.1968).

2. Generally, all these employees are engaged in the selection and packing of glassware manufactured at Wheaton's plant in Vineland, New Jersey. For a detailed description of the work performed, see Wirtz v. Wheaton Glass Co. n. 1 ante, at pp. 25–27.

3. The Equal Pay Act of 1963 (29 U.S.C. § 206(d) was added as an amendment to the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.).

4. Defendant's attack upon jurisdiction, as to a portion of this action, arose after the decision of the Court of Appeals and is an issue de novo. Consequently, the present proceeding is not one confined to a mere ministerial choice of one proposed form of judgment or another in favor of the plaintiff. Instead it raises questions regarding the extent of retrospective back pay, validity of job classification conditions and the propriety of interest upon the award. The magnitude and significance of these new issues prompt an extended analysis and determination.

as here, the existence of a "novel question of law" forecloses under § 216 (c) a recovery of back wages in instances where the law is not "fully settled." And, contends Wheaton, inasmuch as the Secretary succeeded under § 217 to the right of action of the employee, he is bound by the restriction of the "novel question of law" provision contained in § 216. This is so, continues the argument, because §§ 216 and 217 must be read *in pari materia.* 29 U.S.C. § 216(c), which authorizes the Secretary upon the filing of a written request by any employee claiming unpaid minimum wages *or* unpaid overtime (back pay due for a violation of the Equal Pay Act is treated as unpaid minimum wages) to bring an action in any court of competent jurisdiction to recover the amount of such back pay, contains an express jurisdictional limitation:

> "*Provided,* that this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled."

The enforcement provision of 29 U.S.C. § 217 contains no such jurisdictional limitation:

> "The district courts \* \* \* shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in case of violations of section 215(a) (2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due employees \* \* \*" 5

Under this latter provision, the Secretary no longer requires prior written authorization or consent from an employee on whose behalf he brings suit. Under this enforcement provision he is acting in the *public interest.* Wirtz v. Novinger's, 261 F.Supp. 698 (M.D.Pa.1966).

A careful study of the Act reveals that Congress, in furtherance of the paramount public welfare, regulated the labor market by legislative enactment (FLSA). Mindful of its avowed purpose in preventing deleterious effects upon the national economy caused by discriminate wage scales, Congress enacted §§ 16 and 17 of the Act (29 U.S.C. §§ 216, 217), thus affording protection to employees by providing them with a right of action for the recoupment of back wages illegally withheld from them by their employers. Congress was well aware that, in many instances, employees were reluctant to bring direct wage and hour actions against their employers for fear of subsequent retaliation. Consequently, after much experience with the problem, in 1961 Congress amended the Act to empower the Secretary of Labor to both enforce compliance with the law and to recover employees' back wages unlawfully withheld. Prior to the 1961 Amendment, jurisdiction of the District Courts was confined by the 1949 restriction solely to the restraint of violations of wage and hour rights. By the Amendment in 1961, the following phrase was added to § 17:

> "including in the case of violations of section 15(a) (2) the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this Act (except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 6 of the Portal-to-Portal Act of 1947)." (Parentheses in the Amendment.)

The legislative history of the 1961 Amendment demonstrates a broad Congressional design to restore to the District Courts their full equity powers. In keeping with this goal, the above 1949

---

5. Section 215 pertains to certain prohibited acts under the FSLA, in regard to employers who produce goods which move in interstate commerce.

restriction on jurisdiction was repealed. This broader jurisdictional power was not merely to enforce an employee's private, individual right; rather, it was more expansive and expressly designed to "correct a continuing offense against the public interest." See Senate Report No. 145, 87th Cong. 1st Sess., 1961 U.S. Code Cong. & Admin. News, pp. 1620–1658. Wirtz v. Jones, 340 F.2d 901 (5 Cir. 1965); Mitchell v. De Mario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960). See also, Senate Report No. 1744, 86th Cong.2d Sess. pp. 38 and 39, which confirms the broader purpose sought to be accomplished and resulted in the passage of the 1961 Amendment:

"The proposal [1961 Amendment] would accomplish this objective by revising *section 17 of the Act,* which gives the courts express jurisdiction to restrain violations of the Act. *The proposal would expressly include within this jurisdiction consonant with the general equity jurisdiction of the courts,* authority to restrain any withholding of payment by employers of the amounts of minimum wages or overtime compensation required by the Act which the courts find to be due and owing such employees.

"The proposal would relieve the courts and employers from multiplicity of suits based on the same violations of the Act by an employer. This is accomplished by *authorizing adjudication in a single action for injunction* by the Secretary of all substantive issues of coverage, exemption, and violation and by enabling the courts to grant the remedies necessary to extinguish all matters in controversy." (Emphasis supplied.)

It would be a hollow victory, indeed, for the Secretary to litigate with an offending employer over a five year period, only to secure his future compliance. If that were the sole purpose of the legislation, as contended by Wheaton, then an unjust enrichment of the offending employer by foreclosing the Secretary's recovery of improperly withheld wages would result.

One of the very objects of the Amendment was to settle all matters in controversy in one proceeding, thereby avoiding a multiplicity of suits based upon the same violations of the Act. Senate Report No. 1744, supra. The 1961 Senate Report, No. 145 supra, reenforces this underlying theme. Thus, it was not the sole or restricted purpose of the 1961 Amendment, as argued by Wheaton, merely to substitute the Secretary of Labor for an employee desirous of litigating his Section 16(c) rights. Were it otherwise, Congress would only have had to amend Section 16(c) to such effect. Instead, it very carefully amended Section 16(b) and Section 17, thereby obviating the necessity for an employee's request of the Secretary to seek vindication of his individual Section 15 rights and concomitantly conferred upon the Courts full equity powers to grant the Secretary complete relief in one proceeding. That the Secretary has a right to recover back wages under Section 17 is confirmed by a reading of the case law. Wirtz v. Jones, 340 F.2d 901 (5 Cir. 1965). Other courts have adopted the excellent analysis and discussion of the history of Section 17 in *Jones*. See: Wirtz v. Alapaha Yellow Pine Products, Inc., 217 F.Supp. 465 (M.D.Ga.1963); Wirtz v. Robert E. Bob Adair, Inc., 224 F.Supp. 750 (W.D.Ark.1963); Wirtz v. Novinger's Inc., supra; Wirtz v. Martin, 17 WH. Cases 609 (M.D.Pa.1967) not officially reported, and Swann Oil Co., 18 WH. Cases 672 (E.D.Pa.1968), not officially reported. Compare: Wirtz v. W. G. Lockhart Construction Co., 230 F. Supp. 823, 829 (N.D.Ohio 1964) accepting the *Jones* exposition of Section 17 and stating further that "the Secretary of Labor is not burdened with § 16(c) restrictions when seeking injunctive relief [under § 17]." Wheaton's reliance upon Wirtz v. Marino, 405 F.2d 938 (1 Cir. 1969) is misplaced. *Marino* was a Section 16(c) action by the Secretary at the request and on behalf of a single employee for overtime pay alleged to be due for travel to jobsites involving the transportation of work crews and equip-

ment. The District Court found for the Secretary but was reversed on appeal. It was decided on appeal that whether an employee's use of his private automobile to transport crews and equipment of his employer, who lacked transportation, and which use was indispensable to the employer's business, was compensable at overtime rates, presented a question of law which was not "finally settled" at that time. This being so, the Court concluded that the employer was "unwarned" that this activity involved compensable time, and therefore he was not liable for back pay. As distinguished from *Marino*, the present case is a § 17 action on behalf of some 400 female employees engaged in a major industry; further, Wheaton suspected that its job classifications were such that it might not be in compliance with the Act, hence should not be considered an "unwarned" employer with unexpected liability for back wages. It took a calculated economic risk. As an experienced employer, it knew or ought to have known that all three parties—the employer, the employee and the Secretary of Labor—were litigating entitlement to "equalization of wage scale and back wages" and not academic or novel principles of law. Certainly, a suit for basic minimum wages is not unique. Mitchell v. De Mario Jewelry, supra. The question in this case from its very beginning was whether the female "selector-packers" were in fact performing substantially equal work within the meaning of the Act, with males, irrespective of any incidental and occasional tasks. See: Wirtz v. Rainbo Baking Co., 303 F.Supp. 1049 (E.D.Ky. 1967); Shultz v. Wheaton Glass Co., marginal note 1, ante. While Wheaton claims "novel questions of law"[6] were presented foreclosing suit for back wages against an "unwarned" employer, it was rather its mistaken judgment of fact that the work performances of the males and females were substantially unequal within the meaning of the Equal Pay Act of 1963, which resulted in its violation. That there was considerable doubt in Wheaton's mind as to whether its job classifications and wage rates were in compliance with the Act, is manifested by its solicitation, shortly after the passage of the Act, of the advice and assistance of the United States Department of Labor. After a thorough investigation by its inspectors of Wheaton's operations, at the behest of both Wheaton and the Union, the Department informed Wheaton at least a year before commencement of the present action that it was not in compliance with the Act. Wheaton is one of the largest

---

6. Wheaton maintains that six issues of law were novel at the time the action was commenced and were still novel when *certiorari* was denied by the U. S. Supreme Court in May, 1970. It points to the language of the Court of Appeals itself to demonstrate the existence of these novel issues: 1) It claims that the Court of Appeals "expanded the scope of work functions that would be considered 'equal' by interpreting the word 'equal' not to require that the jobs be identical, but only that they be *substantially equal.* (421 F.2d at page 265)." 2) The "extent" of the wage differential between male and female selector-packers was too great, thus the Court imposed a test not contained in the Act. (421 F.2d at p. 263). 3) The "extent" of the wage differential was used also by the Court of Appeals to demonstrate that the Secretary of Labor had carried his burden of proof by showing the 10% spread and that Wheaton failed to satisfactorily establish a factor other than sex for its differential. (421 F.2d at pp. 264 and 266). 4) The Court of Appeals construed "any other factor other than sex" to require statistical proof by the employer of a "one to one relationship between the differential in wages paid and the actual savings realized by the employer due to the extra work done by the male employees." (421 F.2d at pp. 266–267). 5) The Court of Appeals incorporated into the Equal Pay Act of 1963 the anti-discrimination provisions of Title VII of the Civil Rights Act of 1964. a contention never raised by either of the parties or the trial court. (421 F.2d at p. 264). 6) The Court of Appeals relied on two appellate court decisions post-dating the trial court's opinion in the instant case, therefore Wheaton could have had no warning that it might be in violation of the Act.

manufacturers of custom glass containers in the world—it is an entrepreneur which must make business judgments, particularly with respect to operating costs and payrolls. However, regarding the job classifications in question, even after being forewarned by officials of the Labor Department that they failed to comply with the Act, it persisted in its erroneous conviction, an error which this Court shared until the Court of Appeals arrived at a different conclusion. Mistaken judgments regarding fact patterns, and whether there was coverage of particular work performances by the Act, do not necessarily indicate any legal confusion or novelty in judicial construction. When Judge Freedman, speaking for the Court of Appeals, stated at the outset (421 F.2d at page 261):

"This appeal presents important problems in the construction of the Equal Pay Act of 1963 (29 U.S.C. § 206(d)), which was added as an amendment to the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.)."

the "problems in the construction" of the Act, as we interpret this language, related to determination of differences in job classifications, and as stated by the Court "in concrete circumstances." (421 F.2d at p. 265). It is axiomatic that the determination of each case turns upon its own peculiar facts. This principle, however, does not make the law unclear or "novel" in each and every case. That the Court of Appeals considered the law clear in the instant case seems evident from this following language:

"Differences in job classifications were in general expected to be beyond the coverage of the Equal Pay Act. This was because in the case of genuine job classifications the differences in work necessarily would be substantial and the differences in compensation therefore would be based on the differences in work which justified them. Congress never intended, however, that an artificially created job classification which did not substantially differ from the genuine one could provide an escape for an employer from the operation of the Equal Pay Act. (citing authorities.) This would be too wide a door through which the content of the Act would disappear." (421 F.2d at pp. 265–266.)

Throughout this litigation we have been concerned with men and women, their work, their wages, and how they best relate to each other under the equal pay provisions of the Act. These are matters of public concern. Differences in the treatment of sex lies at the foot of the problem and restitution of improperly withheld wages lies at the heart of the Act. Wirtz v. Malthor, 391 F.2d 1 (9 Cir. 1968); Burk Builders, Inc. v. Wirtz, 355 F.2d 451 (5 Cir. 1966); Wirtz v. Hines Realty Company, 361 F.2d 321 (5 Cir. 1966); Wirtz v. Harper Buffing Co., 18 WH. Cases 894 (2 Cir. 1968) not officially reported), affirming per curiam, 280 F.Supp. 376 (D.C.Conn.1968), and Wirtz v. First State Abstract and Insur. Co., 362 F.2d 83 (8 Cir. 1966). Four of these cases reversed district court denials of the precise relief demanded in the instant case. The fifth, *Harper Buffing* affirmed *per curiam* the grant of such relief.

Shultz (then Hodgson) v. American Can Company, 424 F.2d 356 (8 Cir. 1970) is strikingly similar to our case. There, the Court of Appeals reversed the District Court, 288 F.Supp. 14 (W.D. Ark.), and directed it to enter an appropriate judgment in favor of the plaintiff. In doing so, it accepted as a precedent the decision of this Circuit's opinion, supra. Pursuant to the remand, the District Court entered the appropriate order, as directed, providing for the equalization of wage rates, restitution of back wages and interest thereon. However, upon reconsideration of this order, on September 23, 1970, Western District of Arkansas, Fort Smith Division, 317 F.Supp. 152 Senior Judge Miller revised his previous order by disallowing interest. Both parties have filed

appeals from this latest order. The litigation in *American Can* is as extensive as that here.

■ Surely, sitting as a Court of Equity in a Section 217 action, there is subject matter jurisdiction to enjoin the unlawful withholding of back wages and overtime compensation in order to do full equity rather than reward a violating employer. An excellent statement, cutting across arguments and *going right to the core of the matter*, is contained in *Malthor*, supra, 391 F.2d at page 3:

"First, the restraint was meant to increase the effectiveness of the enforcement of the Act by depriving a violator of any gains accruing to him through his violation. Second, the amendment [1961 amendment of Section 17] was meant to protect those employers who comply with the Act from having to compete unfavorably with employers who do not comply, (Senate Report No. 145, 87th Cong., First Session, 1961; 1961 U.S.Code Cong. & Admin.News 1620 at 1658–1659). Those public purposes can be fulfilled in this case only by restraining the appellee from further withholding the unpaid compensation." (brackets supplied.)

■ Wheaton urges that even if jurisdiction to award back pay exists nevertheless, as a Court of Equity, the wage equalization should not be determined to have retrospective effect beyond the date *certiorari* was denied by the United States Supreme Court. To do otherwise, it argues, would subject it to "unexpected liabilities" and result in "windfall payments" to the employees. The Secretary's answer to this contention is indeed dispositive and adopted hereby:

"In effect, defendant is contending that any employer who disagrees with the Labor Department's interpretation of the Act or with the administrative determination of violations is entitled, as a matter of equity, to *complete exemption* from the Act's requirement for as long as it may take to litigate each disagreement to final disposition by the Supreme Court (in the instant case for more than 5 years). Obviously, no such exemption was intended by Congress, and to sanction such exemption would indefinitely frustrate any efforts to secure compliance with the Act by employers generally. The fact that the Act may be 'novel' is no reason to exempt employers from its application for an indefinite period beyond the time Congress has specifically provided. Congress, in the Equal Pay Act, specifically provided a period up to two years before the requirements of the Act would become effective. In defendant's case, this 'grace period' was $1\frac{3}{4}$ years. Defendant's contention that it is only equitable that it be granted another more than 5 years (a total of almost 7 years since the enactment of the Act on June 11, 1963), is obviously inconsistent with the statutory right of the employees, for whose benefit the Act was enacted in the public interest. The employees became entitled to the payments required by the Act as of the date specified by Congress." (Plaintiff's Reply Brief pp. 5–6, emphasis therein.)

■ It should be observed, also, that at the very outset of trial, Wheaton through counsel acknowledged the appropriateness of an award of "back wages" in the event the judicial determination was to the effect that its wage differential was found to be based upon sex and hence in violation of the Act. (Tr. Trans. Vol. 1, pp. 2–4.) However, such a concession does not preclude challenge to subject matter jurisdiction at any subsequent stage of the proceedings, even after decision on appeal, as here. Fed.R.Civ.P. 12(h) (3) permits a challenge to subject matter jurisdiction at any time, for jurisdiction cannot be conferred upon the Court by the parties. Texas Construction Co. v. United States, 236 F.2d 138 (5th Cir. 1956); Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297

(1920). This Court concludes that it does have jurisdiction, in this equity action under Section 217, to award back pay as an illegal withholding of minimum wage payments required to be paid by the Act. In the exercise of equitable discretion the Court must concern itself with all equities, and not just with the myopic view of one. The affected employees, as well as Wheaton, have rights and equities to be considered. In the instant case, Equity dictates that the balance lies in favor of the Secretary on behalf of the employees. Wheaton seems to overlook the very pertinent statements made by the Court of Appeals early in its opinion and at its conclusion: (1) "The Secretary sought an injunction against future violations and the recovery of back pay for past violations." (421 F.2d at p. 261); and (2) "Since the Secretary established his *prima facie* case and the Company failed to prove that the discrimination in wages paid to female selector-packers was based on any factor other than sex, the claim of the Secretary was established and an appropriate judgment should have been entered in his favor." (421 F.2d at p. 267).

■ The final argument advanced by Wheaton is that should this Court award back pay, then the Secretary's request for interest thereon should, in equity and because of its good faith, be denied. The protestation of good faith is strongly challenged by the Secretary. In any event, the existence of good faith is only one of many factors to be considered in Equity. As stated in Marshfield Steel Co. v. NLRB, 324 F.2d 333 at 338 (8 Cir. 1963), "To make such employees whole, the provision for the payment of interest for the time the back pay was wrongfully withheld from them is only equitable. During that period the petitioner [employer] had the use of the money it wrongfully withheld and we can see no reason why it should not pay for its use." See also, Miller v. Robertson, 266 U.S. 243, 257–258, 45 S.Ct. 73, 78, 69 L.Ed. 265 (1924) stating that "Both in law and in equity interest is allowed on money due. Spalding v. Mason, 161 U.S. 375, 396, 16 S.Ct. 592, 40 L.Ed. 738." Thus, in the absence of a proscription of interest, and where a statute imposing a money obligation exists, should the power of this Court to award interest be exercised? The answer, as stated in Rodgers v. United States, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947), is dependent upon the relative equities. In the instant case, withholding of proper wages subjected the affected employees to substandard living, contrary to the objectives of the Act, to the extent that their purchasing power was reduced as contrasted with their male counterparts. The primary purpose for the allowance of interest, in the exercise of judicial discretion, is to make those employees whole, *Marshfield*, supra. Interest, as prayed for, will be allowed.

That compliance with the Act and with the directive of the Court of Appeals for the entry of judgment in favor of the plaintiff may result in some labor problems at the Wheaton Plant, as was testified to upon the return day of defendant's motion and hearing on the settlement of a judgment, is surely a matter of great concern. But compliance with the law is the Court's paramount concern and is, as well, defendant's present and primary obligation. Consequently, Wheaton may not impose conditions of its own for the equalization of wages, as it proposes in the form of judgment submitted by it. Shultz v. American Can Company-Dixie Products, 424 F.2d 356, 359 (8 Cir. 1970), reversing 288 F.Supp. 14 (W.D.Ark.1968). Certainly, both Wheaton and the Union have sufficient expertise to resolve employee work assignment problems.[7] And

---

7. During labor contract negotiations in 1965, Wheaton and the Union mutually agreed that if the Labor Department's investigation then in progress disclosed a violation of the Act, then the respective parties would meet promptly and make the appropriate adjustments in order to comply with the law. (Record on Appeal, A. 850, 876).

it may reasonably be assumed that each will receive guidance and assistance from the Labor Department in coping with such problems in their efforts to comply with the requirements of the Act. New problems, of course, always demand new solutions—the present case no less than many others.

Accordingly, judgment will be entered in favor of the plaintiff Secretary of Labor for the relief demanded in his complaint. The defendant Wheaton Glass Co. will be enjoined from any withholding of wages due or to become due and presently owing to the female "selector-packers"; restitution of such withheld wages shall be computed from March 1, 1965, the date on which the Equal Pay Act became effective in regards to this defendant-employer, together with interest thereon at the legal rate prevailing during such periods of time, such stated amounts to be incorporated by way of supplemental order into the judgment entered herewith.