EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Appellee,

v.

WHITIN MACHINE WORKS,
INC., Appellant.

No. 79–1429.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1980.

Decided Oct. 7, 1980.

Thomas H. Barnard, Cleveland, Ohio (Maria J. Codinach, Squire, Sanders & Dempsey, Cleveland, Ohio, Wayne Huckel, Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., on brief), for appellant.

Warren Bo Duplinsky, Equal Employment Opportunity Commission (Leroy D. Clark, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, Washington, D. C., on brief), for appellee.

Before WINTER, WIDENER and HALL, Circuit Judges.

PER CURIAM:

Judge Winter and Judge Hall concur in the finding of liability as stated in Part I of the majority opinion, while Judge Widener dissents from that part of the majority opinion for the reasons stated in his separate opinion. Judge Widener and Judge Hall concur in Part II of the majority opinion to remand the case to the district court for redetermination of the award for back pay. Judge Winter would affirm the award for the reasons expressed in his sepa-

rate opinion. Therefore, Judge Hall's opinion is the opinion of the court.

The judgment of the district court is accordingly

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

K. K. HALL, Circuit Judge:

This is an appeal by Whitin Machine Works, Inc., from the district court's decision that the wage differential between certain categories of male and female employees[1] violated the Equal Pay Act (the Act), 29 U.S.C. § 201 *et seq.* Whitin contends that the wage differential results from a permissible exception[2] as an informal seniority system consisting of an annual review and wage increase to partially offset the rising cost of living. The trial court found that the company had no established seniority or longevity system for pay increases and that the wage differential between male and female customer correspondents did not result from any of the recognized exceptions under the Act. The trial judge concluded that the employer had failed to prove that the disparity in wages was the result of any sex neutral pay system. Instead, the evidence was found to show that the wage rates served to perpetuate an earlier sex–determined pay differential among the customer correspondents. We agree with the decision of the district court, but remand for redetermination of underpaid back wages.

## I. The Violation

This court is limited to determining whether the findings of the district court are either clearly erroneous or supported by substantial facts. F.R.C.P. 52(a); *EEOC v. Aetna Insurance Co.*, 616 F.2d 719 (4th Cir. 1980); *Keyes v. Lenoir Rhyne College*, 552 F.2d 579 (4th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Thus, the evidence presented by the employer at trial is critical in determining whether the decision of the lower court should be upheld.

The testimony shows that Whitin, a manufacturer of textile and graphic art machinery, employed between four and six customer correspondents since May 20, 1973. The duties of these employees are identical and consist of: (1) telephone contact with customer textile mills, (2) handling incoming and outgoing customer mail, (3) expediting customer deliveries, (4) quoting prices and taking orders, and (5) investigating customer complaints about prices or equipment shortages. Prior to 1973, the company also employed expediters, who were always females, to assist the customer correspondents and fill in for them during their absences. The only difference between these positions was the higher level of responsibility of the correspondents.

The chart at Appendix A shows the starting dates and pay raises for the customer correspondents from 1967 to 1977.[3] Since the district court and the parties mainly focused their attention on employees Price, Graham, Plyler, and DeLorenzo, we will limit our discussion of the wage differential primarily to these customer correspondents.[4]

1. The complaint alleged that Whitin violated the Act regarding both duplicator operators and customer correspondents. The district court concluded that the government had failed to establish a prima facie case of discrimination pertaining to the duplicator operators since the evidence showed that the duties of the male and female operators were not equal. As neither party has appealed this finding, we need not address it.

2. Section 206(d)(1) of the Act permits wage differentials where such differences originated pursuant to:

 ... (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: ...

3. Although only the years from 1973 through 1976 are within the applicable statute of limitations period, the trial court properly considered the ten–year employment history to determine whether any discernible pattern existed to justify the wage difference as one of the four exceptions under the Act.

4. The trial court does discuss the fact that Scoggins was hired at a much higher starting rate than any other customer correspondent. The judge held that Whitin had failed to ade-

The burden of establishing that a prima facie violation of the Act has occurred rests upon the plaintiff. Once there is a showing of unequal pay for equal work, the burden of proof shifts to the employer since the facts underlying the wage differential are usually within his unique knowledge. *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). It is clear from the evidence presented at trial, as summarized in Appendix A, that the burden was properly that of the company to raise any justification for the disparity in pay.

Whitin argues that employees who were promoted to customer correspondent were subject to a yearly evaluation which involved a standard percentage increase in wages. Although there were no written guidelines for this annual review, the company maintains that this program qualified as an informal seniority system under the Act and was the actual reason for the wage differential.

The senior correspondent, who had primary responsibility for administering this review program, testified that the starting salary of Mr. Price was attributable to his longevity and experience with the company prior to his advancement to customer correspondent. He further stated that in 1973, the first year covered by the present action, the beginning pay for customer correspondents, with little or no experience, was $500. The company contends that the difference in starting pay from 1968 to 1973 was due to cost of living adjustments.

The government challenges Whitin's informal seniority system on two points.

Firstly, although the system need not be written, the salary histories for the customer correspondents indicates that no established seniority program was ascertainable or in effect. The fact that regular evaluations began in 1973 did not alleviate the prior existing wage disparity which was allegedly based on some consideration of sex. Thus, it is argued that the present alleged system only served to perpetuate an existing sexual discrimination affecting pay.

Secondly, the government argues that in order to demonstrate a valid exception under the interpretive regulations of the Act, 29 C.F.R. § 800.144, the employer is required to communicate the existence of such a system to the affected employees. *Cf. Brennan v. Goose Creek Consolidated Independent School District*, (D.C.Tex. 1973), 5 EPD ¶ 8621, aff'd 10 EPD ¶ 10,395, 519 F.2d 53 (5th Cir. 1975). Based on the testimony of the customer correspondents, denying any such knowledge of an informal seniority system,[5] it is asserted that the employer failed to properly establish any justifiable exception under the Act.

Whitin cites *Brennan v. Victoria Bank and Trust Co.*, 493 F.2d 896 (5th Cir. 1974), as the appropriate legal standard in this case. In *Brennan*, the bank, on an annual basis, received forms from supervisors recommending appropriate pay increases based on longevity and merit, although the raises were usually standard. The Fifth Circuit upheld this yearly review on the ground that it was an unwritten, informal program which was "systematically and objectively"

---

quately show that Scoggins' salary was based on his B.S. degree in textiles or his prior long-term employment with Burlington Industries, Whitin's largest customer, at which time he was responsible for ordering parts for textile machinery.

Adopting the reasoning in *EEOC v. Aetna Insurance Co.*, 616 F.2d 719 at 726 n.10 (4th Cir. 1980), we believe that Whitin could pay Scoggins more, as a newly hired customer correspondent, on the basis of his experience and background than what was offered to employees who were newly promoted to that position. Thus, his salary is irrelevant to our resolution of the case before us.

5. On oral argument, counsel for Whitin conceded that none of the supervisory personnel had informed the customer correspondents of the existence of the annual review program. However, he argued that the regulations requiring communication of the seniority system were vague and not to be accorded the force of law. While we agree with this latter contention, it is well recognized that such regulations are entitled to great deference. *Brennan v. Goose Neck Consolidated School District*, 519 F.2d 53 (5th Cir. 1975).

administered. *Id.* at 901. Whitin argues that the trial court erroneously interpreted *Brennan* as requiring a written set of guidelines in order to establish an exception under the Act. However, our reading of the district court's conclusions of law clearly shows that the judge below properly considered the evidence as failing to establish either a formal or informal seniority system or any other sex neutral basis for the wage differential which would constitute a valid exception.[6]

█ It is well–known that when asserting an exception under § 206(d)(1) of the Act, "[t]he burden [on the employer] of proving that a factor other than sex is the basis for a wage differential is a heavy one." *Brennan v. Owensboro–Daviess County Hospital*, 523 F.2d 1013, 1030–31 (6th Cir. 1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976). The district court's holding that the employer failed to meet this burden is not clearly erroneous and is supported by substantial facts within the record. Thus, the finding that Whitin violated the Act with regard to the customer correspondents will not be disturbed on appeal.

## II. The Remedy

After holding that a violation of the Act had occurred, the district court adopted the back wage computations of the Wage and Hour Division of the Department of Labor as the amount owing to the three female employees. This effectively raised the wages of the female customer correspondents to the same level as the lone male employee, which is consistent with the remedy prescribed in § 206(d)(3) of the Act. The trial court also ordered the payment of interest on the underpayments calculated from the median point of each employee's period of relevant employment. This is the same remedy as awarded by the courts in

*Hodgson v. American Can Co.*, 440 F.2d 916 (8th Cir. 1971), *Hodgson v. Food Fair Stores, Inc.*, 329 F.Supp. 102 (M.D.Pa.1971), and *Shultz v. Wheaton Glass Co.*, 319 F.Supp. 229 (D.N.J.1970). However, in those cases no attempt was made by the trial courts to reflect the respective years of service with the employer for the various employees. This approach results in awarding equal pay for employees doing the same job regardless of their relative longevity with the company.

█ In the present case, the district court's order equalizes the wages for employees having 9.5, 4, 4, and 1 years of experience as customer correspondents and whose total times of employment with Whitin were 20, 8, 8, and 3 years, respectively. The better approach in fashioning a remedy is outlined in *Hodgson v. City Stores, Inc.*, 332 F.Supp. 942, 951 (M.D.Ala.1971), aff'd 479 F.2d 235 (5th Cir. 1973):

> The granting of relief in cases such as this is often a difficult, complex task. This is particularly true when the employer, as here, engages a large number of employees and experiences a substantial turnover in personnel. As in most selling environments, there are workers with significant amounts of past experience, while other employees have virtually no prior training. Thus, the more that particularity is demonstrated in determining restitution, the more equitable will be the results.

Although Whitin failed to establish that any established informal system of seniority existed which would justify the wage differential, we believe sufficient evidence was before the trial judge from which to tailor appropriate relief for this particular situation.

**6.** Conclusion of Law No. 9, of which appellant complains, states:

> Defendant has failed to meet its burden of showing that the pay differential between male and female customer correspondents was the result of a sex neutral application of any established, formal or informal merit system, seniority system, production related earnings system, or other sex neutral determinant. Defendant maintained no written guidelines and failed to communicate the essential components of the putative sex neutral pay system to its employees. [citations omitted]

1099

## APPENDIX A

### STARTING DATES AND PAY RAISES BY YEAR FOR CUSTOMER CORRESPONDENTS

| NAME / Original Date of Hire / Original Salary | 1966 | 1967 | 1968 | 1969 | 1970 | 1971 | 1972 | 1973 | 1974 | 1975 | 1976 | 1977 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Scoggins, James (8-1-66) ($625/month) | $675/month (12-1-66) | $675 | $709 (7-1-68) | $750 (7 1 69) | $750 | $780 (5-1-71) | $810 (5-1-72) | $810 Deceased 10-15-73 | | | | |
| Price, Norris (9-10-56) ($1.00/hr.) | | $415/month (7-10-67) $450/month (11-16-67) | $480 (6 17-68) | $520 (2 1-69) $585 (11 17 69) | $615 (7-1 70) | $668.33 (11-16-71) | $708.33 (12-1-72) | $750 (12-1-73) | $812.50 (12-1-74) | $875 (12-1-75) | $929.17 (12-1-76) | |
| Crump, Larry E. (11-14-62) ($1.85/hr.) | | | | | $729.16/month (8-1 70) | $770.83 (1-1-71) | $804.16 (3-1-72) Re-assigned 12-21-72 | | | | | |
| Carrick, Thomas L., Jr. (3-16-76) ($500/month) | | | | | | | | | | | $500/month (3-16-76) Terminated 7-30-76 | |
| Keever, Nell (6-15-64) ($70/week) | | $433.34/month (6-27-67) $460/month (10-16-67) | $460 | $483 (6 1 69) | $515 (6-1-70) | Worked in other classification | $570 (9-25-72) | $600 (1-1-73) Resigned 2-28-73 | | | | |
| Hughes, Raynell (6-6-66) ($282/month) | | | $375/month (12-16-68) | $400 (6-1 69) $440 (10 16-69) | $480 (9 16 70) | $515 (11-16-71) | $515 Resigned 9-22-72 | | | | | |
| Graham, Amelia P. (9-16-68) ($300/month) | | | | | | | | $500/month (2-1-73) | $540 (2-1-74) | $600 (1-1-75) | $645 (1-1-76) | $690 (1-1-77) |
| Plyler, Mamie L. (4-21-69) ($310/month) | | | | | | | | $500/month (3-1-73) | $530 (3-1-74) | $600 (1-1-75) | $645 (1-1-76) | $690 (1-1-77) |
| DeLorenzo, Amina J. (8-30-71) ($360/month) | | | | | | | | $455/month (9-15-73) $500/month (12-1-73) | $500 Resigned 6-21-74 | | | |

**WINTER, Circuit Judge, concurring and dissenting:**

I concur in Judge Hall's opinion affirming the district court's determination that defendant violated the Equal Pay Act, 29 U.S.C. §§ 201 *et seq.* But I would affirm the district court's award of back pay, with interest, and not remand the case for a redetermination of back pay giving effect to the factor of seniority which defendant itself was proved not to have considered in fixing its wage rates.

The Act, 29 U.S.C. § 206(d)(1), unequivocally states that an employer shall *not* pay wages to employees of one sex less than the wages paid to employees of the opposite sex for equal work

> except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, that an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

The Act further provides that, when an employer has paid less than minimum wages prescribed by § 206, the Secretary [1] may sue to recover the amount of the unpaid minimum wages for the benefit of the underpaid employees. 29 U.S.C. § 216(c). If the allegations that less than the minimum wages were paid are sustained, the measure of recovery is "the amount of the unpaid minimum wages ... and an equal amount of liquidated damages." [2] 29 U.S.C. § 216(c).

With respect to three female employees who were employed as customer correspondents and who were paid less than their male counterparts, the district court found:

> The pay differential between male and female customer correspondents did not result from merit, job performance, longevity or seniority. The defendant had no established merit system to reward exceptional performance. There is no showing in the record that the males who were paid higher salaries performed in a more meritorious or productive manner than any of the lower paid females.

I am in complete accord that these findings are amply supported by the record and are not clearly erroneous. Notwithstanding affirmance of these findings, the majority concludes that, although the employer never raised the issue, the district court was in error when it awarded back pay for three women correspondents on the basis of a male correspondent who was hired as a customer correspondent in 1967.[3]

This ruling, in my view, is counter to the Act. The Act, as I read it, says that, unless an exception can be invoked, there shall be equal pay for equal work; and, upon proof that equal pay for equal work was not forthcoming, the measure of recovery is the unpaid wages. There is absolutely no statutory warrant for saying that the unpaid wages may be reduced to the level of what an employer might have legally paid had the employer established a *bona fide* seniority system and scaled his wage rates according to that system.

Moreover, on the facts of this case, it is particularly inappropriate that the back pay award to two of the three employees be reduced by any factor of seniority. The

---

1. The right of the Secretary of Labor to sue for equal pay for underpaid employees was transferred to the Equal Employment Opportunity Commission on July 1, 1979. Executive Order No. 12067, 43 Fed.Reg. 28967 (1978), Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19807 (1978). This occurred while this suit was pending and EEOC was substituted for the Secretary.

2. By virtue of the statute of limitations in the Portal–to–Portal Act of 1947, recovery for a willful violation of the minimum wage require-

ment is limited to the unpaid minimum wages for the three years preceding the filing of suit.

3. Both in the written and oral arguments presented to us, defendant contended only that the unequal pay for women correspondents was authorized by one or more of the exceptions contained in § 206(d)(1). No argument was advanced that, if these contentions were rejected, the amount of the back pay award was improperly calculated.

male employee, Norris Price, whose salary was the standard for the back pay award was employed as a customer correspondent on July 10, 1967. He had only fourteen months seniority over Amelia Graham and only twenty-one months seniority over Mamie L. Plyler, the two employees who received the largest awards ($14,436.72 and $14,576.72, respectively).[4] It is of course true that Graham and Plyler were not initially given the title of customer correspondent but were called "expediters." But, as the district court found, the duties of expediters were largely identical to those of customer correspondents. Indeed, Price was trained in his duties as a customer correspondent by an expediter who resigned from employment beyond the limitations period. Thus, I think that there would be no inequity in affirming the district court's back pay award.

Because I think the position of the majority as to damages both illogical[5] and contrary to the Act, I respectfully dissent on this issue.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the result obtained by the per curiam opinion and in the judgment of the court, but I do not concur in either the opinion of Judge Winter or Judge Hall.

I respectfully dissent to the finding of any liability on the part of the defendant based on the record in this case and the opinion of the district court.

In Judge Hall's opinion, at p. 1096, he calls attention to Appendix A of that opinion, and the same is again called attention to on page 1097. The substance of Judge Hall's opinion is that the facts as stated in Appendix A are sufficient to show liability. Indeed, the facts disclosed in Appendix A are the only facts with respect to pay differentials on which liability is based, and the opinion carefully confines its consideration of pay comparability to the pay of the three female claimants and the pay of Price, a male employee. P. 1097. Rather than liability, in my opinion the facts as disclosed by Appendix A show that there is not any liability.

Among the findings of fact of the district court is that "the raises given to customer correspondents were cost of living increases [having nothing to do with sex, of course] to compensate for inflation." That being true, the finding of fact not having been found erroneous, beginning pay should be the only relevant inquiry. Because Scoggins' beginning pay, as stated in Judge Hall's opinion, pp. 1096–97, n. 4, was properly held to be "irrelevant" to the resolution of the majority on the finding of liability, the only employee whose pay is subject to comparison for the purposes of this case is Price, as is acknowledged in Judge Hall's opinion. And Price's beginning pay was *lower* than that of any of the claimants. Thus, liability based on the beginning pay of Price could not logically be found. Neither could liability be found as a matter of law.

The effect of Judge Hall's opinion is to require consideration of longevity in the consideration of damages but to deny the consideration of longevity in addressing liability. I think the two conclusions are necessarily inconsistent as an abstract proposition, but more especially here in view of the unrefuted finding of the district court that pay raises for customer correspondents were on account of "cost of living increases" and thus had nothing to do with either longevity or sex.

It is further my opinion that the fact that an employer does not have a "system" of pay increases does not make it liable for pay differentials unless it discriminates on account of sex, which has not been shown here.

---

4. Price had four years seniority over the third woman employee who was awarded $2,258.33.

5. To me, it defies logic to say that defendant is liable because of its failure to do an act, but that the damages which it must pay may be reduced because it might have done that act.