**UNITED STATES of America, Plaintiff,**

v.

**LOGAN CO., Mathews Conveyer Company, Mesta Machine Company, Palmer-Bee Company, Standard Conveyor Company, and United Engineering and Foundry Company, Defendants.**

Civ. No. 9658.

United States District Court
W. D. Pennsylvania.

Jan. 4, 1957.

See, also, D.C., 130 F.Supp. 550.

---

· D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., William L. Maher, Department of Justice, Philadelphia, Pa., for plaintiff.

· Robert E. Hatton, Louisville, Ky., Samuel McCune, Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., Edmund K. Trent, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., G. Harold Blaxter, Blaxter, O'Neill & Houston, Pittsburgh, Pa., Alexander Unkovic, Kountz, Fry & Meyer, Pittsburgh, Pa., Robert F. Patton, Smith, Buchanan, Igersoll, Rodewald & Eckert, Pittsburgh, Pa., Walter J. Blenko, Blenko, Hoopes, Leonard & Buell, Pittsburgh, Pa., for defendants.

JOHN L. MILLER, District Judge.

This action was commenced by the government to "prevent and restrain continuing violations by defendants" of Section 1 of the Sherman Act, 15 U.S.C.A. § 1, upon a charge that defendants illegally conspired to fix and maintain minimum prices of patented sheet chargers by means of uniform patent license agreements. The question before the court is whether the action should now be dismissed upon the motion of defendants under federal procedural rule 56, 28 U.S.C.A. inasmuch as the patent underlying the agreements has expired.

Rule 56(c) provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Defendant Mesta Machine Company (Mesta) was the assignee of patent No. 2,141,394 which issued to Iversen on December 27, 1938, covering his inventions embodied in a sheet charger device, useful to the steel industry in the process of feeding individual sheets of steel into rolling mills. Between 1939 and 1941, Mesta entered into patent license agreements with each of the other defendants, authorizing the other defendants to manufacture and vend sheet chargers covered by the Iversen patent. The agreements were substantially identical and provided for the payment of identical royalties and for the observance by the licensees and Mesta of minimum sales prices to be fixed from time to time by Mesta, which prices were to be the same for Mesta and all parties licensed. As alleged in the complaint, each agreement was to expire at the end of the life of the patent.

Paragraph 13 of the complaint alleged as follows:

"Beginning in or about the year 1939, and continuing thereafter up to and including the date of the filing of this complaint, the defendants have entered into unlawful contracts and have engaged in and are now engaged in an unlawful combination and conspiracy in unreasonable restraint of interstate trade and commerce in the manufacture and sale of sheet chargers among the several states of the United States, in violation of Section 1 of the Sherman Act. The defendants are continuing, and threaten to, and will con-

tinue the aforesaid offense, unless the relief hereinafter prayed for in this Complaint is granted.

"Certain of the specific agreements, licenses, arrangements, understandings and acts which formed a part of said offense and which were used in effectuation thereof are hereinafter more fully set forth and described."

Thereafter plaintiff details the alleged conspiratorial transactions, understandings and agreements between defendants, all of which relate to the patent licenses granted by Mesta under the Iversen patent, and prays that the agreements be declared illegal and canceled; that injunctive relief be granted to enjoin defendants from further operations under the license agreements described; that defendants be perpetually enjoined from entering into any agreements or arrangements, or performing any acts having the purpose or effect "of continuing, reviving, or renewing the hereinabove alleged violation of the Sherman Act;" and that other relief be granted as the nature of the case may require. Defendants deny the allegations of illegality and conspiracy.[1]

The motion to dismiss proceeds upon the fact, not disputed, that the Iversen patent expired on December 27, 1955. Each of the defendants has submitted two affidavits in support of the motion. The first group of affidavits is intended to demonstrate that defendants made relatively few sales under the patent license agreements and that the minimum sales provision was a dead letter almost from the outset. The second group of affidavits is intended to show that except for defendant United Engineering and Foundry Company (United) none of the defendants owns or contemplates acquiring patents relating to sheet chargers and that none of the defendants is licensed or intends to become licensed under patents relating to sheet chargers. In an opposing affidavit, counsel for the government sets forth numerous recitals

from the answers of the defendants to the complaint, responses to interrogatories and requests for admissions along with certain informal remarks of counsel for defendant Mesta and contends, principally, that the foregoing establish that there are genuine issues as to material facts which must be resolved at trial; that there is a reasonable probability that the practices charged will be resumed or repeated; and that adjudication of the legality of the questioned practices is required as a guide to future action, thus precluding a holding of mootness.

■ Summary judgment may not be granted upon the basis of evidence which a jury would be free to disbelieve, Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967, and affidavits in support thereof may be considered only in determining whether an issue of fact is presented. Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580, 581. Where material facts averred in an affidavit are peculiarly within the knowledge of the moving party, the cause must proceed to trial in order that the opponent may be allowed to disprove such facts by cross-examination and by the demeanor of the moving party while testifying. Subin v. Goldsmith, 2 Cir., 1955, 224 F.2d 753, 758–760.

The court agrees with plaintiff that the pleadings, admissions and affidavits on file indicate that an issue of fact is presented as to whether defendants engaged in an unlawful conspiracy in restraint of trade which continued up until the date of the filing of the complaint. However, if the controversy has become moot, the legality of defendants' conduct is the very question which the court is forbidden to consider.

■ The court has previously held, in refusing a motion for judgment on the pleadings filed by the defendant United, that the described licensing agreements did not constitute the sole illegality al-

---

1. After the oral argument upon the present motion, defendant Logan Company consented to the entry of a final judgment against it.

leged in Paragraph 13, supra, in view of plaintiff's allegations that a conspiracy existed among the defendants. The court adheres to the view that a conspiracy in restraint of trade is broader and more than a contract in restraint of trade, United States v. Kissel, 1910, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168, but nevertheless is satisfied that the present controversy is moot.

■ While the allegations of Paragraph 13 are very broad, the only illegal acts charged against defendants in the complaint are those by which they allegedly conspired in restraint of trade to fix and maintain minimum prices at which sheet chargers covered by Mesta's patent would be sold. Such interpretation of the complaint becomes obligatory, moreover, in light of the express stipulation by counsel for plaintiff during the course of a pre-trial conference held in these proceedings that for the purpose of the present action "the conspiracy alleged relates only to sheet chargers licensed under the Iversen patent." [2] Since the Iversen patent has expired and it affirmatively appears that the alleged illegal license agreements could survive no longer than the patent, there remains no subject matter upon which the conspiracy charged against defendants could operate. The court is therefore of the opinion that the question as to the actuality of any presently existing controversy between the parties is ruled by United States v. Hamburg-American Co., 1915, 239 U.S. 466, 36 S.Ct. 212, 60 L. Ed. 387. In that case, the legality of a contract between steamship companies in alleged violation of the Sherman Act was held to be moot because World War I automatically dissolved it and made continued relationship between the companies impossible. Inasmuch as the controversy between the parties had no present actuality, the court dismissed the action, saying:

"The legal proposition is not in substance controverted, but it is urged, in view of the character of the questions and the possibility or probability that, on the cessation of war, the parties will resume or re-create their asserted illegal combination, we should now decide the controversies in order that by operation of the rule to be established any attempt at renewal of or creation of the combination in the future will be rendered impossible. But this merely upon a prophecy as to future conditions invokes the exercise of judicial power not to decide an existing controversy, but to establish a rule for controlling predicted future conduct, contrary to the elementary principle which was thus stated in [People of State of] California v. San Pablo & Tulare R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747, 748: 'The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard.' " 239 U.S. at page 475, 36 S.Ct. at page 216.

In the Hamburg-American case, the court notes that mere discontinuance of an unlawful practice by the parties charged with violating the law does not relieve the court of the duty to pass on the question of legality where at the will of the parties the illegal practice may be resumed. United States v. Trans-Missouri Freight Association, 1897, 166

2. Pre-trial Record, pp. 7, 34.

U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 1911, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310. However, the court distinguishes such cases, saying:

" 'But if the intervening event is owing to the plaintiff's own act or to a power beyond the control of either party, the court will stay its hand.' " 239 U.S. at page 477, 36 S. Ct. at page 217.

United States v. American-Asiatic Steamship Co., 1917, 242 U.S. 537, 37 S. Ct. 233, 61 L.Ed. 479; cf. Standard Oil Co. (Indiana) v. United States, 1931, 283 U.S. 163, 181, 51 S.Ct. 421, 75 L.Ed. 926; United States v. Alaska S.S. Co., 253 U. S. 113, 115–116, 40 S.Ct. 448, 64 L.Ed 808.

Termination of defendant Mesta's patent rights was brought about by operation of law, a force over which the present parties had no control, and further relations between defendants are impossible with respect to the subject matter of the alleged conspiracy, i. e., sheet chargers licensed under the Iversen patent. Although plaintiff contends the case is not moot because it has alleged a continuing conspiracy against defendants, nothing remains in the record save the accusation of past wrongdoing to sustain the foregoing averment. Plaintiff has made it evident both in the complaint and at the pre-trial conference that it does not allege a conspiracy to fix prices of sheet chargers generally but only in the framework of defendants' patent license agreements. It has indicated throughout the pre-trial conference that its proof at trial will be so confined.

■ The parties have submitted separate briefs on the question of authority of the court to award injunctive relief with respect to unpatented as well as patented sheet chargers. The court is agreed that if authority to retain jurisdiction of the present action existed, a decree entered could regulate practices connected with acts found to be illegal and could "close all roads to the prohibited goal." International Salt Co. v. United States, 1947, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; United States v. United States Gypsum Co., 1950, 340 U. S. 76, 71 S.Ct. 160, 95 L.Ed. 89. Such eventual considerations do not alter the circumstance that the conspiracy upon which the decree of the court may operate is that which has been defined by the complaint. United States v. National City Lines, D.C.1955, 134 F.Supp. 350, 355; United States v. W. T. Grant Co., 1953, 345 U.S. 629, 635, 73 S.Ct. 894, 97 L.Ed. 1303.

■ Numerous authorities hold that voluntary discontinuance of illegal practices does not render a controversy moot where the defendant is free to return to his old ways, unless it can be demonstrated that "there is no reasonable expectation that the wrong will be repeated." United States v. Aluminum Co. of America, 2 Cir., 1945, 148 F.2d 416, 448; United States v. W. T. Grant Co., supra, 345 U.S. at page 632, 73 S.Ct. at page 897; cf. Walling v. Helmerich & Payne, 1944, 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29; United States v. Imperial Chemical Industries, D.C.1951, 100 F.Supp. 504, 591–593, decree entered D.C., 105 F.Supp. 215; United States v. United States Alkali Export Ass'n, D.C.1949, 86 F.Supp. 59, 79–80; United States v. National City Lines, D.C.1953, 118 F.Supp. 465, 467. It is argued that the allegation of a continuing conspiracy creates an issue of fact whether there is a "reasonable expectation" of resumption of defendants' activities upon which evidence should be adduced. Cf. United States v. Standard Register Co., D.C.1947, 7 F.R. D. 287. There could be no reasonable expectation of a resumption of illegal acts with respect to sheet chargers licensed under the Iversen patent. Plaintiff's argument therefore requires the court to give to the conspiracy described in the complaint broader scope than accorded by plaintiff itself, but even so must be rejected.

■ Neither the answers filed by defendants, their responses to requests for admissions or interrogatories, nor the affidavits filed in support of or in op-

position to the motion reveal the existence of a genuine issue of fact on the question of the threat of future violations. Plaintiff's fear that defendants will revive their agreements with respect to other patents in the future is based only on the fact that defendants continue to maintain the legality of their conduct under the principle of United States v. General Electric Co., 1926, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362. No statement of counsel for defendant Mesta brought to the attention of the court can be regarded as evidence that Mesta intends to enter into "similar agreements in the future if the occasion arose" as argued; and in the absence of a judgment for plaintiff, no evidence of Mesta's alleged illegal proclivities may be found in the fact that other anti-trust proceedings have been instituted against it. The plaintiff has throughout argued that defendants may resume their alleged illegal agreements at will, but in so doing, has overlooked the fact that ownership or control of valuable patents relating to sheet chargers is a prerequisite to revival of agreements like those described in the complaint. But it may be taken as established by uncontroverted averments of defendants' affidavits that neither defendant Mesta nor any defendant except United has such ownership or control.[3] There is a possibility that defendants may in the future violate the anti-trust laws, but as the court says in United States v. W. T. Grant Co., supra, 345 U.S. at page 633, 73 S.Ct. at page 898:

> "The purpose of an injunction is to prevent future violations, * * * and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something

more than the mere possibility which serves to keep the case alive."

■ The plaintiff's final contention is that the case is saved from being moot because the applicability of the General Electric case to factual situations like that presented here "must be finally determined so that all parties might be guided thereby." However, even though the exact limits of the General Electric case may be undefined, there could be no dispute that a patent owner may not by confederation, combination, or conspiracy, unite with others in restraint of trade in connection with his patent. United States v. L. D. Caulk Co., D.C.1954, 126 F.Supp. 693, 708; see United States v. Masonite Corp., 1942, 316 U.S. 265, 277, 62 S.Ct. 1070, 86 L.Ed. 1461.

■ Cases cited by plaintiff support the principle that where public agencies are involved, termination of alleged illegal practices does not necessarily render the controversy moot, when the situation presents a need for decision as a guide to the public agency in future similar situations. Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 1944, 141 F.2d 331, 334–335; Walling v. Haile Gold Mines, Inc., 4 Cir., 1943, 136 F.2d 102, 105–106; Gay Union Corp., Inc. v. Wallace, 1940, 71 App.D.C. 382, 112 F.2d 192, 195. But in none of the cases cited or in others examined by the court was the need for guidance to the public agency the only basis for the decision. In the absence of a reasonable expectation that the wrong alleged against the present defendants will be repeated, this court may not exceed its jurisdiction in determining issues for the government of future cases.

■ In accordance with established practice, the action will be dismissed without prejudice. United States v. Munsingwear, Inc., 1950, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36; United States

---

3. United is the owner by assignment of patent No. 2,278,140 issued to M. P. Sieger on March 31, 1942. United avers under oath it has never discussed the possible granting of licenses thereunder with other manufacturers and "does not now intend or contemplate the granting of any such right to anyone."

v. Aluminum Co. of America, supra; United States v. W. T. Grant Co., supra. When, and if, defendants attempt to resume or enter into similar alleged conspiracies and agreements, it will be time enough for the government to commence new litigation against them. Such course is preferable, in the view of the court, to entering into a protracted trial of issues without present vitality.