**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**CITY STORES, INC., doing business as Loveman's, Defendant.**

**Civ. A. No. 2958–N.**

United States District Court, M. D. Alabama, N. D.

Oct. 6, 1971.

Beverley R. Worrell, Regional Sol., and Edwin G. Salyers, Atty., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Kenneth Perrine of Leader, Tenenbaum & Perrine, Birmingham, Ala., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

JOHNSON, Chief Judge.

This action was brought by the Secretary of Labor under the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d) (1) [1] and 215(a) (2) [2] against City Stores, Inc., doing business as Loveman's, to enjoin alleged wage discrimination on the basis of sex and to recover for the female employees of the defendant the difference between their wages and the wages of male employees allegedly doing equal work during a certain time period. The suit was commenced pursuant to 29 U.S. C. § 217.[3] The parties have stipulated

1. 29 U.S.C. § 206(d) (1):

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsec-

tion, reduce the wage rate of any employee.

2. 29 U.S.C. § 215(a) (2):

After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—

＊ ＊ ＊ ＊ ＊

(2) to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Administrator issued under section 214 of this title;

3. 29 U.S.C. § 217:

The district courts, ＊ ＊ ＊ shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a) (2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter. ＊ ＊ ＊

that the defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the Act and is subject to its application. *See* 29 U.S.C. §§ 202(a) and 203(s).

Plaintiff has alleged that female salespersons engaged as regular employees to sell women's and children's clothes and related items have been and continue to be paid less than men with substantially equal amounts of retail sales experience who sell men's suits. The Secretary, having concluded that the work of these male and female employees was and is equal within the meaning of the Act, contends that violations have been and are occurring. Plaintiff further alleges violations as to a female seamstress who alters women's clothes and is paid less than a male tailor who alters men's clothes.

Defendant denies generally that it has violated the Act. It alleges that jobs within a department store cannot be equated equitably with other sales jobs within the same store. Rather it contends that jobs within its store must be compared with sales jobs in other specialty shops selling a similar product within the market area. In explaining the wage disparities between various sales personnel, defendant claims that "merit adjustments are made to all sales personnel based upon their cost of sales for the previous year." This adjustment is computed by dividing yearly salary by yearly net sales and awarding minor salary increases if the salary is sufficiently small in comparison to sales.

The defendant further claims that there is a wide range of wage rates throughout the store dependent upon the individual employee, the department to which the employee is assigned, and the product sold. Finally, it is alleged that the wages have been based upon the rate prevailing in the labor market for the selling of particular products and are not based upon sex.

The case is now submitted upon the several issues formulated, the pleadings, the evidence, and the briefs. The evidence consists of oral testimony, numerous exhibits and depositions—all offered in support of or in opposition to the respective contentions of the parties. This Court, as authorized by Rule 52, Federal Rules of Civil Procedure, *now incorporates in this memorandum opinion the appropriate findings of fact and conclusions of law.*

I

The parties are in agreement that the defendant operates numerous retail department stores throughout the United States. It has five such establishments in Alabama operating under the trade name "Loveman's" and the Montgomery store is the focal point of this dispute. It is also agreed that this particular store, which is a modern two-story building, is located in a shopping center and ordinarily employs approximately 80 regular salespersons. Extra employees engaged to fill in as necessary, whether men or women, are routinely hired at the applicable minimum wage under the Fair Labor Standards Act, and plaintiff alleges no violation as to them.

As is true of similar employees in any department store, the primary duty of each salesperson is to sell merchandise. This requires knowledge of how to meet the pulic, analyze the customer's needs, present the merchandise with understanding, know the stock and its location, close the sale, help select for the customers and overcome their objections, trade up in quality of merchandise, sell more than one item of what the customer initially wants, and see that the merchandise is delivered in proper shape, form and fit. Finally, it is uncontroverted that in the men's suit department the salesmen receive a base hourly rate plus a two percent commission on net sales. This commission was one percent until February 1969.

Despite these several points of resemblance, the litigants' first point of impasse is a comparison of the male per-

sonnel selling men's suits and the female salespersons selling women's and children's clothing and related items. Defendant argues that these positions may not be compared since its individual, distinct departments may not be considered as being within the same "establishment" as used in § 206(d) (1). The applicable regulation, 29 C.F.R. § 779.304, provides that "the unit store ordinarily will constitute the establishment * * *. The mere fact that a store is departmentalized will not alter the rule." On this point, this Court agrees with the conclusion drawn in the similar case of Hodgson v. Robert Hall Clothes, Inc., 326 F.Supp. 1264, 1268–1269 (D.Del.1971), that this regulation correctly interprets the Act.

As to the actual comparison of these positions, defendant initially seeks to defend the apparent differential between these groups of employees by characterizing those who work in the men's department as "specialists" on the theory that the sort of marking required in altering men's suits is materially more difficult and complex than the fitting required for women's and children's clothes. The second prong of the justification is that men are more difficult customers since they seldom know what they desire or need. Thus it is incumbent upon the salesmen or "specialists" that they select that which will best meet the customers' needs. Defendant portrays women, on the other hand, as more discerning shoppers with much more definite concepts of style and fabric. Accordingly, so the argument goes, they are easier than men to cater to since they know what they want. In addition, defendant maintains that the marking and fitting of women's and children's clothing is significantly easier than similar work on men's garments.

There is also substantial conflict between the parties concerning the similarity of the work of the male tailor and the female seamstress employed by defendant. It is generally agreed that the tailor, Timothy Richards, is called upon to perform fitting duties only when all the sales personnel are occupied or when unusual alterations must be made. The parties are also in accord that Mr. Richards' work is ordinarily limited to sleeve alterations, the hemming of trousers, other trouser alterations, and the occasional altering of suit collars.

Lucille Campbell, defendant's seamstress, performs all of the women's alterations. It appears that while the sales personnel in the women's department do some marking or pinning, they tend to call the seamstress to the sales floor for assistance somewhat more frequently than the tailor is called to the men's department. Mrs. Campbell ordinarily is called upon to perform such alterations as sleeve adjustment, the hemming of skirts, other skirt and dress alterations, and occasionally the narrowing of shoulders on women's garments. It is agreed that the tailor and the seamstress use essentially the same equipment and work under virtually identical conditions. At all times pertinent to this lawsuit, the tailor has been paid at a much higher hourly rate than the seamstress, as follows:

|  | Oct. 1967 | Jan. 1968 | April 1968 | April 1970 | May 1970 |
|---|---|---|---|---|---|
| Lucille Campbell | $1.55 | $1.72 | $1.72 | $1.82 | $1.87 |
| Timothy Richards | $1.95 | $2.14 | $2.29 | $2.29 | $2.34/2.39 |

## II

The Equal Pay Act was added to the provisions of the Fair Labor Standards Act in an attempt to eliminate assumptions and traditional stereotyped misconceptions regarding the value of wom-

en's work.[4] Shultz v. First Victoria National Bank, 420 F.2d 648, 656 (5th Cir. 1969). One of the more lucid descriptions of congressional intent concerning the Equal Pay Act is that of the Third Circuit in Shultz v. Wheaton Glass Co., 421 F.2d 259 (3d Cir. 1970):

The Act was intended as a broad charter of women's rights in the economic field. It sought to overcome the age-old belief in women's inferiority and to eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it. *Id.* at 265.

See also Shultz v. American Can Co., 424 F.2d 356, 360 (8th Cir. 1970).

█ The initial burden of proof in cases such as this falls to the Secretary of Labor. To discharge his responsibility the Secretary must establish a prima facie case of discrimination by proving a differential between male and female employees engaged in jobs which require equal skill, effort and responsibility and which are performed under similar working conditions. Hodgson v. Daisy Manufacturing Co., 317 F.Supp. 538, 541 (W.D.Ark.1970).

█ Perhaps the most difficult, and at the same time crucial aspect of these cases is the determination of whether certain tasks may be regarded fairly as equal for purposes of ascertaining whether there has been a violation.[5] Although there was initial confusion among some courts, in which, for example, it was held that jobs must be "substantially identical",[6] the law is now well-settled that the positions to be compared need be only substantially similar or substantially equal in effort, skill, responsibility and working conditions. Hodgson v. American Bank of Commerce, 447 F.2d 416 (5th Cir. Aug. 23, 1971); Shultz v. American Can Co., 424 F.2d 356, 360 (8th Cir. 1970).

██ Once the Secretary has established a prima facie case, the burden falls upon the defendant, if he is to avoid being in violation, to bring himself within one of the four exceptions of 29 U.S. C. § 206(d) (1). These exceptions have been held to be affirmative defenses which must be pleaded and proved by the defendant employer. Shultz v. Corning Glass Co., 319 F.Supp. 1161, 1163 (W.D.N.Y.1970); Wirtz v. Basic, Inc., 256 F.Supp. 786, 790 (D.Nev.1966). As to the fourth and most commonly asserted exception of § 206(d) (1), that a differential is based on factors other than sex, it is clear that the Act forbids all discriminations between male and female employees not based upon factors other

4. Congress states expressly the policy of the Act in section 2 of Public Law 88–38, 77 Stat. 56:

(a) The Congress hereby finds that the existence in industries engaged in commerce or in the production of goods for commerce of wage differentials based on sex—

(1) depresses wages and living standards for employees necessary for their health and efficiency;

(2) prevents the maximum utilization of the available labor resources;

(3) tends to cause labor disputes, thereby burdening, affecting, and obstructing commerce;

(4) burdens commerce and the free flow of goods in commerce; and

(5) constitutes an unfair method of competition.

(b) It is hereby declared to be the policy of this Act, through exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct the conditions above referred to in such industries.

5. Apparently similar factual patterns brought under the Equal Pay Act occasionally generate contradictory results. Compare Shultz v. Brookhaven General Hospital, 305 F.Supp. 424 (N.D.Texas 1969) (male orderly's position equal to that of female aide) and Hodgson v. Good Shepherd Hospital, 327 F.Supp. 143 (E.D.Texas 1971) (male orderly's position not equal to female aide).

6. See, e. g., Wirtz v. Muskogee Jones Store Co., Inc., 293 F.Supp. 1034, 1037 (E.D. Okl.1968).

than sex, not merely those intended to be sexually based. Any other interpretation would destroy the efficacy of the statute and would permit the exception to swallow the rule. Hodgson v. American Bank of Commerce, 447 F.2d 416 (5th Cir. Aug. 23, 1971).

### III

As previously indicated, the Secretary alleges that certain male and female selling positions within the defendant's store are sufficiently alike to warrant comparison. He makes a similar claim as to the male and female tailoring positions. Defendant contends first, that the respective positions are not substantially equal and second, that even if they are sufficiently alike, any differential is the result of factors other than sex.

It is clear that both men and women salesmen in their respective departments are responsible for the successful presentation of their items to their customers. They both must assist in selecting the item of the size and material most appropriate to fit the customer's needs. Both bear the responsibility for suggesting garment alterations which will enhance the customer's appearance. There is no evidence to indicate that one of the groups has greater responsibility than the other for the maintenance and procurement of proper inventory. Defendant's argument that the fitting of a man's suit differs in kind from the fitting of a woman's pants or dress suit or coat is wholly unpersuasive and contrary to common sense. Evidence of defendant's own lack of reliance upon the supposed specialty of fitting men's clothing can be found in its failure to evaluate its male employees for this ability and to remunerate them accordingly.

Defendant's second justification for its conclusion that the jobs are unequal is even less convincing than the first since the argument appears to prove too much. By deprecating male customers, depicting them as sheep with little or no concept of what they really desire, the defendant may have presented the easiest selling situation. If the male customer, as the defendant argues, has no perception of style or fabric, then the salesman can rest assured that the customer will generally accept whatever is placed before him. Persuasion is unnecessary since the customer came to be guided. Women, on the other hand, would surely be more difficult clients since their sharpened or refined tastes would more easily withstand the salesperson's suggestions and would necessitate substantial persuasion. Defendant's contention is at best without merit and at worst is a salvo for the plaintiff.

Finally, while it has not been denominated as such, the defendant has made a third argument which appears to go to the question of the similarity of the respective jobs. The notion presented is that the work must be unequal since each job deals with clothing designed for one sex and clients only of that sex are customers. Thrown in is the fact that no women have applied for work in the men's department and, similarly, no men have applied to the women's department.

This contention is clearly frivolous. It begs the crucial issue by assuming that the sale of men's and women's clothing is unequal. Further it overlooks an obvious fact of life in our society. The fallacy of the defendant's view has been ably described by the recent case of Hodgson v. Robert Hall Clothes, Inc., 326 F.Supp. 1264 (D.Del.1971) where the court said:

> The jobs performed by salesmen and salesladies, respectively, are not reasonably susceptible of performance by both sexes because of the nature of the jobs. * * * Defendants have always had a policy of having only salesmen in the men's and boys' department because of the frequent necessity for physical contact between the salespersons and the customers which would embarrass both and

would inhibit sales unless they were of the same sex. *Id.* at 1269.

While selling women's clothing, particularly women's suits, coats and dresses, has been the focus of the comparison with the selling of men's suits, the Court is clear that the selling of other clothing items requires sufficiently similar skill, effort and responsibility to come also within the coverage of the Act. Specifically the Court notes that persons working in defendant's millinery, foundations, negligee, children's and infants' departments must possess capabilities similar to those of persons selling men's suits. In each of these major departments, of which there are in some instances sub-departments, the sales personnel must have a knowledge of fabric, style and physique, knowledge of various brands of merchandise, the ability to fit and mark the alterations required, knowledge of whether and to what extent an item can be altered, awareness of customer preference and the value of the product.

For example, the evidence indicates that in the foundations department the salesladies are often required to obtain intimate customer measurements in order to assist in the purchase of the proper item. There was testimony to the effect that from time to time manufacturers' representatives would visit the foundations department to instruct on the fitting of such merchandise. The evidence further reflects that the fitting of hats in the millinery department is sometimes accomplished by a blocking-and-steaming process when the desired item is too small. This is done by one of the female sales personnel. Work in these departments is to be distinguished from that in other departments, such as the ladies' handbags, in which the salesladies are required merely to complete the sale of a customer-selected item which is on display.

■ Therefore, after careful consideration of all the evidence presented in this case, it is the finding and conclusion of this Court that the respective jobs of salespersons in the defendant's men's, women's and children's clothing departments are substantially equal within the meaning of the Equal Pay Act. Further, the Court finds and concludes that the defendant has engaged in a continuing, routine practice of hiring its salesladies at a lower wage while at the same time denying them an opportunity to perform on a commission basis. Thus, the Secretary has established his prima facie case as to these personnel.

■ As for the tailoring positions, it has already been established that the same tools are employed and that the alterations are performed in essentially the same surroundings. It is also clear that both the tailor and the seamstress may be called to the sales floor to supervise or conduct the making of garments in unusual or difficult cases. Although there is conflict between the parties as to whether working on men's clothing is materially different from making similar alterations on women's garments, this Court finds that the male and female tailoring positions encompass work of sufficiently similar effort, skill and responsibility as to render them within the purview of the Act.

Apparently anticipating the Secretary's success in demonstrating a prima facie case of a wage discrimination between substantially equal positions, defendant has advanced several arguments seeking to establish that its wage scale has been based on factors other than sex. Its chief contention is that any differential has resulted from traditional and historical differences in job content, the scale prevalent in the labor market and the customer following of certain male salespersons.

■ The Court having determined that the male and female sales positions are substantially similar, it is unnecessary to discuss the defendant's first

point. The fact that women tend to receive less from the labor market as a whole also carries no weight since defendant may not justify its discrimination by pointing to the conduct of others. The fact that the defendant has succeeded in paying a low, labor market rate does not authorize that which the Act seeks to end: wage differentials within its store between equivalent jobs. Finally, the evidence reflects, and the Court so finds, that certain of the women salespersons also maintained customer followings. Thus, the Court is compelled to the conclusion that the wage differential is a product of sexual discrimination and that the defendant is unable to avail itself of exception (iv) of § 206(d) (1). The defendant has violated and continues to violate the Act and the plaintiff is entitled to relief.

■■■■ As a final aspect of its attempt to demonstrate that any differential is the result of factors other than sex, defendant contends that the Court should refrain from awarding back wages, and particularly interest on these wages, because defendant has at all times acted in "good faith." The Fifth Circuit has recently given short shrift to this plea. In Hodgson v. American Bank of Commerce, 447 F.2d 416 (5th Cir. Aug. 23, 1971), the court said, "we do not believe that the 'based on any factor other than sex' language of the statute was intended to provide a good faith defense to a clear violation of the Act." See also Shultz v. Mistletoe Express Service, Inc., 434 F.2d 1267, 1272 (10th Cir. 1970). This Court finds defendant's violations of the Act sufficiently clear as to vitiate any possible good faith defense.

■■■ As part of a motion to amend to conform with the evidence, filed after the hearing of the case, the defendant has raised a challenge to this Court's jurisdiction to enjoin or restrain defendant from violating § 206(d) (1) of the Act, or to withhold wages due employees and to direct the payment of interest thereon. The theory of this defense, apparently known as the "novel proviso" defense, is that since § 216(c) [7] denies authority to the Secretary to recover back wages when an action is brought on behalf of a named employee and the case raises an unsettled question of law, a similar restriction should be read into § 217. It is clear that § 217 literally contains no such restriction, but defendant contends that it must be read in pari materia with § 216(c).

This issue has resulted in some conflict among those cases in which it has been presented. Indeed, one district court has accepted the defendant's view. Hodgson v. American Can Co., 317 F. Supp. 152 (W.D.Ark.1970). The better view, however, seems to be that adopted by other courts to the effect that had Congress wished the restriction of § 216 (c) to apply to § 217, it would have so provided. Shultz v. Mistletoe Express Service, Inc., 434 F.2d 1267 (10th Cir. 1970); Shultz v. Wheaton Glass Co., 319 F.Supp. 229 (D.N.J.1970). Further, it is clear from the legislative history that Congress adopted an amendment to § 217 in 1961, allowing the Secretary to bring an action enjoining the withholding of unpaid minimum wages and

7. 29 U.S.C. § 216(c):
    * * * When a written request is filed by any employee with the Secretary of Labor claiming unpaid minimum wages or unpaid overtime compensation under section 206 or 207 of this title, the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of such claim: *Provided*, That this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled. * * *

overtime compensation on his own initiative, expressly to overcome deficiencies in § 216. *See* Senate Report 145, 2 U.S.Code Cong. & Admin.News, 87th Cong., 1st Sess. p. 1658 (1961). One of the very objects of the amendment was to settle all controverted issues in one proceeding, thus avoiding a multiplicity of suits based upon the same violations of the Act. Shultz v. Wheaton Glass Co., 319 F.Supp. 229, 232 (D.N.J. 1970). The case of Wirtz v. Marino, 405 F.2d 938 (1st Cir. 1969), relied upon heavily by defendant, is inapposite since it was a case brought under § 216(c). Accordingly, it is the conclusion of the Court that the restrictions of § 216(c) are not to be read into § 217.

IV

The granting of relief in cases such as this is often a difficult, complex task. This is particularly true when the employer, as here, engages a large number of employees and experiences a substantial turnover in personnel. As in most selling environments, there are workers with significant amounts of past experience, while other employees have virtually no prior training. Thus, the more that particularity is demonstrated in determining restitution, the more equitable will be the results.

Certainly not all female employees should receive the same wage. The defendant apparently makes some adjustment for experience, though no objective or consistent guidelines are used. Seemingly, the subjective judgment of the store manager prevails. Thus it falls to the Court to fashion a reasonable distribution if some objective pattern of hiring can be found.

A hiring pattern is discernible among those hired since January 1969. Two women engaged since that date, Bessie Poindexter with 31 years of experience and Nina Rigsby with 8 years, were both hired at $2 an hour. Since that date, 16 women, with varying degrees of experience up to 7 years, have been hired

at $1.60 an hour. It appears, therefore, that defendant has taken 8 years as the point at which higher wages are paid for experience. This provides a reasonable and practical basis for classifying defendant's salespersons as experienced or inexperienced.

Based upon the most recent hiring rates of experienced men and women (William Harvey, Edward Taylor, Bessie Poindexter, and Nina Rigsby), it appears that the wage disparity between men and women in this group is 57 cents an hour plus the two percent commission on net sales. Based upon the wage rates of inexperienced male and female salespersons (James Royal, Michael McMillan, Steven Lambert, Thomas Elliott, Shirley Willgus, Carolyn Walker, Elizabeth Rowe, Aliene Davis, Judy Hayes, Opal Brantley, and Marilyn Johnson), between April 1968 and the date the complaint was filed in October 1969, it appears that the wage disparity between men and women in this group is 15 cents an hour.

Accordingly, it is the order, judgment and decree of this Court that the defendant be and it is hereby enjoined from engaging in any and all violations of 29 U.S.C. § 206(d) (1).

It is further ordered that the wages of each currently employed female salesperson working as a regular employee who has at the date of this opinion at least 8 years of retail sales experience, including service with defendant, and who sells women's and children's clothes and related items, shall be raised by 57 cents an hour and paid a two percent commission on net sales. Restitution back to October 12, 1967, shall be paid on this basis to all such experienced, female salespersons so employed since that date except that only a one percent commission shall be paid up to and including March 1, 1968.

The employees coming within the above-named category are entitled to such increase and restitution for the pe-

riods when assigned to the following departments: [8]

Men's clothing—no. 702
VIP shop (young men's clothes)—no. 707
Men's sportcoats, slacks—no. 704
Men's hats and caps—no. 710
Men's sportswear—no. 722
Men's furnishings—no. 721
Boys' wear and goal post—nos. 730, 738
Millinery—no. 401 (now no. 21)
Hat bar—no. 403
Ladies' coats and suits—no. 500
Junior coats and suits—no. 531
Junior dresses—no. 532
Ladies' sportswear—no. 540
Mixing bowl—no. 546
Suburban corner—no. 545
Junior sportswear—no. 547
Miss Loveman shop—no. 550
Flair shop—no. 553
Women's moderate dresses—no. 562
Misses' moderate dresses—no. 563
Maternity shop—no. 564
Misses' budget dresses—no. 567
Corsets and bras—no. 600
Day wear—no. 611
Sleep wear—no. 612
Negligees and robes—no. 620
Daytime dresses—no. 630
Infants' wear—no. 641
Children's wear—no. 642
Girls' wear—no. 651
Pre-teen wear—no. 652

It is further ordered that the wage rate of each currently employed female salesperson working as a regular employee who has had less than 8 years of retail sales experience at the date of the entry of this order and who sells or during some portion of her employment has sold in any of the above-named departments, shall be increased by 15 cents an hour. Restitution back to April 1, 1968, shall be paid on this basis to all such female salespersons employed since that date.

It is further ordered that Lucille Campbell's wage rate shall be raised to the level presently being paid to Timothy Richards or, in the event that Mr. Richards is no longer employed by the defendant at the date of this order, then her wage shall be raised 52 cents an hour. Restitution back to October 12, 1967, shall be based on the difference between her rate and that of Mr. Richards during this time.

Restitution shall be computed for each affected employee or former employee on the above basis. Plaintiff shall make a representative available to assist in making the wage computations herein directed. Such determination of amounts owing shall be approved by the parties and shall be subject to the supervision of the Court. The computations shall identify and name the affected employees or former employees and state the amount due each and shall be filed with this Court within 30 days of the date of this order. Interest at the rate of 6 percent per annum from the median date of employment shall be allowed on the amounts due. Legal deductions required by law shall be made. Plaintiff shall distribute such sums to the persons so determined or to their surviving heir or heirs if that be necessary, and any money not so distributed by the plaintiff within three years of the date of this order, because of plaintiff's inability to locate the proper persons or because of such persons' refusal to accept such money, shall be deposited into the Treasury of the United States.

It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against the defendant, for which execution may issue.

---

8. The department numbers are reflected by defendant's evidence and were used throughout the trial.